Okay, counsel, please approach. Can you each state your name and let us know who you represent? Good morning, Your Honor. Krista Kapp on behalf of the appellant, Palmolive Tower Condominiums. My name is Bruce Ficken. I'm here with Eric Osterly. I represent Pepper Construction. I'm not a member of the Illinois Bar, so I want to thank the court for allowing me to argue this appeal. What is your name again? Bruce Ficken, F-I-C-K-E-N. Happy to hear from you. We typically allow 15 minutes per side, but we don't have another case after this, so if you get a little long-winded, you're unlikely to see the red light. And we'll try to give you as much time to articulate your arguments without excessive interruption, but we do like to interrupt, so thank you. Thank you, Your Honor. Please proceed. May it please the Court. My name is Krista Kapp, and I represent the appellant, Palmolive Tower Condominiums. We are here today because an arbitration panel failed to keep its jurisdictional limitations in check, and a trial court that turned its head when the arbitration panel's excessive exercise of powers came into question. Simply put, this appeal is about an arbitration run amok, a panel that ignored jurisdictional limitations and basic principles of contract law. The question is, why didn't you do some form of objection? Your Honor, we actually did object. After the case was over? No, Your Honor, we objected in a letter dated February 12, 2008. Is a letter a proper objection? It's not a court document. We objected to the arbitration panel and filed it as part of the arbitration proceedings as a result of what would be similar in a court case to a case management call or a status call or a status report of the parties is when we objected. Go ahead. Was that after you had filed your answer to the amended, not pleading, but the amended statement demand that they made? Yes, Your Honor. In fact, Pepper had filed an arbitration demand followed by an amended arbitration demand. However, it wasn't until much later in the proceedings that we understood the hidden intentions of Pepper Construction as to having its subcontractors act as parties in the arbitration. I think that's where you have a problem here because there were allegations made in the initial demand that talked about change order costs and impact claims and production claims for their subcontractors in the initial demand, and then they made it more clear that there were, I think, $18 million, pretty specific, in the second demand, and there was no response in terms of an answer or affirmative defense indicating a problem with jurisdiction there, so that's sort of what we're struggling with here. Right, and look, Palmolive doesn't have a problem with Pepper bringing pass-through claims on behalf of its subcontractors. In fact, Illinois law would allow Pepper to bring claims on behalf of its subcontractors, but that's not what happened in this arbitration. The subcontractors brought the claims. In fact, six subcontractors presented witnesses, cross-examined witnesses, engaged experts who provided reports. What's your argument that those are merely the attorneys for Pepper, that Pepper would have had to hire or do it anyway? They would have had to have brought in the same witnesses. They would have, but it would have been Pepper presenting them. It would not have been a parade of subcontractors and their counsel coming in to the arbitration and presenting these claims. Furthermore, the problem, not only with the mere presentation by the subcontractors and acting as if they were parties, instead of the mere subterfuge that has been placed in front of us that states they were additional counsel for Pepper, is that the claims under Illinois law, if you're going to bring a pass-through claim, those claims should be liquidated. Here there is nothing of the sort. The joint interest and liquidating agreement is mere illusory in nature. It doesn't set forth the claims that are actually going to be... What about Blair? Well, Your Honor, I guess Homol is not arguing that you can never bring a pass-through claim. What it's stating is you have to have some sort of agreement between the general contractor and the subcontractor so that at the end of the trial, the subcontractor knows what it's going to be receiving. It might be a percentage. It might be whatever the contractor gets against the owner for whatever claims the contractor is presenting on behalf of the subcontractor. It could be as simple as that, but that's not what happened here. At the end of the day, at the end of this arbitration, we have the subcontractors and general contractor who still have claims against each other in the underlying case. They're a breach of contract claims. We have a general contractor who continues to bring claims against the owner above and beyond the enforceability or validity of mechanics claims. The general contractor has brought claims for construction trust and constructive trust against Homol. And as I said, the subcontractors still have claims for breach of contract against Pepper, which is not what has happened in any of the cases that have been cited in the brief. Not one. And to add insult to injury, we have subcontractors who have filed pleadings stating they are not bound by the arbitration award. So we are faced in a situation in the underlying case where Pepper has been granted a judgment of $35 million, which incorporates amounts awarded to the subs, and yet those subcontractors are claiming in a case they are entitled to different amounts. You know, we can fairly feel the passion coming through in your briefs and certainly here today. No problem expressing that. But I guess what we would look for in the record is some evidence of the same, you know, fire and brimstone, you know, same objection when this parade of horribles is foisted upon you when yet another lawyer for yet another subcontractor comes in and there's not a peep, not an objection, not a claim, you know, they don't belong here, he doesn't belong here, that lawyer doesn't belong here, this party doesn't belong here, none of it. I mean, it's called the next witness. Your Honor, in the February 12, 2008 letter, when it became apparent that Pepper was going to proceed in the manner it was going to proceed in the arbitration, the language of objection was that Pomala vigorously objects. Because, I mean, you could have done more than that. We did object during the proceeding itself. Why weren't you in chancery? Well, that is something additional, Your Honor, we could have done. However, Illinois law does not state you must object five times. It does not state you must object six times, seven times, eight times. It simply states you must timely object. When you're going over the cliff, usually you decide to do something. Right, Your Honor, we felt it was our best position to move forward with the arbitration, state our objections, and argue the case. In addition, it's clear that the arbitrators realized that we had objected to their jurisdiction because they requested post-hearing briefs on the issue. Now, Pomala lost in those post-hearing briefs, but in any event, it's clear that Pomala objected to the jurisdiction of the arbitrators. In addition to the arbitrators exceeding their jurisdictional limits, the arbitrators also committed gross errors of fact and law on the face of the award when it awarded the subcontractors their attorney's fees, when it awarded Pepper and the subcontractors its expert expenses, and when it awarded Pepper's counsel its travel expenses. Illinois law is clear that awarding fees to a party is a matter of contract or statute. There is no contract between Pomala and its subcontractors that would allow the subcontractors the award of their subcontractor fees. In addition, the subcontractors were not named the prevailing party. Thus, the arbitrators committed gross error of fact and law by awarding the subcontractors their attorney's fees. In addition, the arbitrators continued with this excessive use of power when it attempted to rewrite the general contract and add the word expenses to the prevailing party attorney's fees clause when it awarded Pepper and the subcontractors its expert expenses. Illinois law is clear. Expert expenses are something above and beyond costs in a prevailing party attorney's fees clause. The J.V. Esker and Sons case is clear on that, and Pepper does not dispute it in its brief. How much money are you talking about there in terms of just the expert entry? I believe it's approximately $2 million. I'm sorry, it's approximately $3 million, Your Honor. The arbitrators also committed gross errors of fact and law on the face of the award when they awarded travel expenses for Pepper's out-of-state counsel. Now look, Pepper is free to choose whatever attorney it wants to choose. That is not Pomala's argument. However, in a city like Chicago, when there are plenty of qualified construction attorneys, there is no reason for Pepper to go out of the city or the area to choose its counsel. It looks like they're doing it today, too. And that's their choice, but Pomala doesn't have to pay for that. There's nothing under Illinois law that states that Pomala has to pay, even under a prevailing party situation, that we have to pay for the travel expenses of their out-of-state counsel when there are plenty of qualified construction lawyers in the city of Chicago. How much is that line item? That's approximately $466,000. The third issue I'd like to discuss with you this morning is that the Court abused its discretion in appending Rule 304A language to the confirmation order. Look, because of the manner in which the arbitration proceeded and because there are so many questions left open-ended in the way that there is no liquidating agreement and that the unliquidated pastoral claims are not final, this order did not dismiss a party, it did not resolve a claim, it did not dismiss a count. No litigation has been resolved. Pepper is still continuing to bring claims against Pomala. The subs are still bringing claims against Pepper, and the subs are claiming they are not bound by the arbitration award. So there is a potential that Pomala is going to have to relitigate all of the issues against the subs that it did in the arbitration. It was an abuse of the trial court's discretion to claim that the $35 million judgment is final when all of these issues remain open. It's also important to note that even the liquidating agreement itself states that back charges and any other open issues between the general contractor and its subs will be dealt with at a later date. So those issues on the face of the liquidating agreement remain open, but yet the trial court simply ignored the fact that these issues with the subcontractors remained open and simply wanted to affirm the award to Pepper. It's important to note the policy of Rule 304A to promote judicial economy by generally allowing only a single appeal per case in which all appealable matters are raised. But with all of these open issues still remaining to be determined in the trial court, we will be right back here appealing several of those issues later on. In fact, Pepper recently requested Rule 308 certification from the trial court, even before the conclusion of this appeal. This is not efficient, nor does it promote judicial economy. Because the order is not final and there is just reason to delay this appeal, the trial court abused its discretion in appending Rule 304A language. The order should be vacated and reversed. Do you have any further questions? I have one, but you can answer it when you come back up, because I want to give you time to look at it. In your reply brief at page 2, you indicate, and I'll quote, there's no question that the panel did not have jurisdiction over the subcontractor's claims. Both the panel and Pepper concede this fact. However, in blatant disregard of this fact, the panel allowed the subcontractors to participate in the arbitration and present their individual claims. That is your position? Yes, it is. And you're basing Pepper's concession on statements that it made at page 19 of its brief? Yes. Okay. When you come back up, I'll ask you to explain that to me. Okay. Thank you, Your Honor. You're being very nice today. I'm just Mr. Pleasant. Is the other gentleman sitting there, is he Eric? That's me, Your Honor. Okay. I just wondered. Yes, Your Honor. Thank you again for letting me address the Court. First, some facts about the arbitration that tend to be overlooked, but I think are very important to remember in the context of the current appeal. The arbitration was pursuant to a broad-based AIA-type arbitration clause, all claims arising out of or relating to. To the extent that that clause informs the arbitrator's jurisdiction, they had jurisdiction to hear anything between Pepper and Palmolive as it relates to this contract. Second, this was an experienced panel of highly qualified arbitrators. You get that from the CV materials that are included in this record, as well as reading any of the multiple decisions that they made, which are also part of this record. Third, this was a 90-day hearing arbitration. The arbitrators fully considered and dismissed the very grounds raised here to attack this award. They made a detailed award, and they wrote detailed opinions dismissing on the very grounds raised to support the appeal. And lastly, there is no allegation of any arbitrator misconduct of any kind with regard to this arbitration. The standard of review, which hasn't been mentioned, I believe the Illinois Supreme Court has said that wherever possible, courts should construe arbitration awards so as to uphold their validity. I believe that a motion to vacate can be granted only in extraordinary circumstances and only where there is clear, strong, and convincing evidence. I believe that all presumptions are to be resolved in favor of confirmation of the award, and I also think, and I think this was conceded by the tenor of the argument, that even mistakes in judgment or fact or law made by the arbitrators will not be the grounds for vacating an arbitration award. I think with regard to the procedure for how the subs participated, the panel got it right and proceeded in accordance with the way these cases are handled, not only generally in Illinois, but all across the country, and as blessed by United States v. Blair, by the Supreme Court of the United States. But the grounds as it relates to waiver are so striking in this case that I'd like to address the waiver argument first. There are really three standards that are applicable to waiver in an arbitration case. And this one in particular, the state standard, which is any objection to jurisdiction at arbitration must be made, quote, at the earliest possible moment. Second, under Rule 8C of the applicable AAA rules, any objection must be made no later than the filing of the answering statement. And then just if we're not sure whether those standards will suffice, there's Rule 38 that said if one proceeds with arbitration with knowledge of a violation of any rule, he waives any objection to that violation absent a written objection. And it's against these standards that the issue. What about their letter? I mean, I realize it's like as far, it appears to be late, but they did file it. Yes. They concede, Mr. Justice, that at the very latest, they knew exactly how the arbitration hearing would proceed as it relates to subcontractor costs, and they knew that in January of 2008. That's at page 10 of their brief and page 36 of their brief. Thereafter, Palmolive wrote a lengthy letter to the arbitrators addressing in part how the hearing would be conducted relative to the subcontractor cost overruns. It is in this letter, because they concede knowledge in January of 2008, so it's in this letter that Palmolive must argue that it objected to the jurisdiction of the arbitrators. They have to argue that letter because it comes after knowledge of exactly how the arbitration will proceed.  We all know the significance of a jurisdictional objection as opposed to an evidentiary objection or something else. It's significant because it could result in a do-over, and in extreme cases, it could result in a do-over of an arbitration that took 90 days and involves $35 million. And so we all know how to make an objection based on jurisdiction. There is not one word in that letter or anywhere in this record until after 77 days of hearings to anything that says we object to the jurisdiction of the arbitrators to decide anything. It's not in that letter. And in fact, in the letter, the very letter that they are relying on, they concede jurisdiction. Page 6 of the letter, here's what Palmolive says. It was our understanding, this is what they say should be the case, it was our understanding that as part of Pepper's claims, Pepper would be presenting the claims of various pass-through subcontractors. That's exactly what we did at arbitration. That's exactly in the letter what they say should have happened. That's exactly what did happen. And then Palmolive says, in contrast to what they argue now, Palmolive does not dispute that Pepper is entitled to present pass-through claims. That's what they say. Again, nowhere in the letter does it state or intimate that jurisdiction is not proper on the part of the arbitrators. Frankly, if they had raised any objection to jurisdiction, we would have been in court immediately. Why would we proceed ever with an arbitration for 90 days of hearings if there was even a hint of an objection to jurisdiction? The arbitrators, and this is an interesting appellate issue I must concede, the arbitrators reviewed the facts that related to the issue of waiver in detail. And the arbitrators found, I believe as a matter of fact, that there was a waiver of the jurisdiction argument. In fact, addressing that very letter, they said the panel finds that Palmolive's argument that it, quote, objected to the involvement of the pass-through subcontractors in this proceeding, unquote, by its letter to the panel dated February 12, 2008 is without merit. A careful reading of Palmolive's letter reveals that Palmolive did not object to the jurisdiction of the panel to hear Pepper's pass-through claims or to the arbitrability of pass-through claims, but rather raised concerns about the hearing proceedings and the manner in which Pepper intended to present pass-through claims. I believe that with regard to the waiver of the panel, that that is a factual decision that I believe is binding on the appellate court. I have no problem that jurisdictional issues the court reviews as did the lower court de novo, but I believe that the fact of waiver is something that the arbitrators were entitled to make a determination of. The reason I said it's kind of a funny question is that when we get to the level of Judge Curcio, who also examined the record, she made the same finding. She also said, in addition to the law, she also said as a matter of fact there's been a waiver here. I have read the cases. I really don't know what the standard for review of her decision, hearing this in a sense as an appeal is. But for the arbitrators, I think the panel is bound by their finding as a matter of fact of waiver, and it's very clear that they found as a matter of fact there was waiver. Now, one of the things that I'm always worried about if I have a waiver argument is that someone thinks that I'm afraid to argue the merits of the objection itself. And of course we're not. First, let me be clear as exactly how this was handled at arbitration, because I've heard a lot of characterization and opinions about the subcontractors being parties to the arbitration. They were not parties to the arbitration. It was ruled from the outset that they would not be requested for the subcontractors. There in fact is no relief provided in the award for the subcontractors. This was an arbitration between Palmolive and between Pepper, and it was intended to decide all contractual issues related to that controversy, and it did. The only question is whether Pepper was entitled to pass through costs that it incurred through the work of subcontractors. The United States v. Blair says that that's absolutely proper, and frankly it would be a waste of judicial economies to handle it any other way. Passion, which I realize is a parallel appellate court, decided exactly that, and that's what we did. They did not participate as a party. There was an objection. You'll see in the papers that Palmolive says, well, we should have made application for these subcontractors to be a party, and we didn't. No, we shouldn't have. They were not parties. We didn't make an application for them to be a party, and in fact, in the record, Palmolive objected that they should not be a party, and everyone agreed with that. To the extent that the Palmolive objected, the arbitrators heard and decided that objection in Palmolive's favor. They did not participate as parties, either as claimants or at trial or in terms of the award. Here's what the panel said about Palmolive participating as a party. To the extent that Palmolive's allegations suggest that the panel has allowed the subcontractors to participate in the arbitration as separate and independent parties, and by the way, this is the objection raised at the end of the hearings, not during the proceedings. Palmolive's allegations are rejected. As is common practice in construction industry arbitrations under such circumstances, subcontractors are routinely permitted to participate in the hearings to present their pass-through claims using their own legal counsel, witnesses, evidence, and expert witnesses where necessary. This is the most efficient and cost-effective method of presentation to the mutual benefit of the parties and does not create any prejudice. The panel's order establishing the hearing procedure clearly establishes that the subcontractors are not separate parties to the arbitration and that their legal counsel, to the extent of their participation in the hearings, are simply serving as co-counsel to Pepper for the limited purpose of assisting Pepper with the presentation of the subcontractor's pass-through claims. And in almost exactly the same language, Judge Curcio rejected a similar contention. I will add one other thing about this. At arbitration and at the court below, Palmolive conceded that from the outset throughout arbitration, passion controlled how the party should proceed and how it should be decided. And this case was decided exactly in accordance with passion. Now, they raised differences between the agreement that Pepper had with its subs from this and other cases, but that frankly ignores the fact that both under Blair and under passion, it doesn't make any difference what that agreement says. There doesn't need to be any agreement at all. That agreement is between Pepper and the subs. That agreement relates to how those parties relate to one another, both before arbitration and if they can ever collect the $35 million judgment. Palmolive is not a party to that agreement, directly or otherwise. Under that agreement, there's nothing in that agreement that regulates Palmolive's rights. Under passion, which both parties agree apply, the agreement means nothing. There doesn't have to be any agreement. I'm not going to take a lot of time with the award of the arbitrators of costs and attorney's fees. I would like to know why it is you believe that $466,000 in travel expenses for out-of-town counsel constitute reasonable expenses. Okay. First, this is not in the record, but it is an answer to your question. My firm has represented Pepper Construction Company in construction claims for 25 years. And I would suggest that they are entitled to their counsel and their choice of counsel. And then the question becomes whether the award of that part of the fee award is an abuse of discretion or a gross error by the arbitrators. And that really comes down to what the agreement said about that and what the arbitrator's jurisdiction was as it relates to costs and attorney's fees. The contract says that the prevailing party shall be awarded costs and attorney's fees. We decided at the beginning of the arbitration that we wouldn't present as part of the arbitration evidence of costs and attorney's fees, because there was also a counterclaim where Palmolive was claiming costs and attorney's fees. We thought we would save that, then have the prevailing party determine, and then it was just a matter of what were the costs and attorney's fees. Costs is not defined in the agreement. Cost is Webster's first, second, and third definition of cost. Attorney's fees, of course, means attorney's fees. And I will concede, because we conceded to the arbitrators, that I don't remember whether it says reasonable costs and attorney's fees, but we conceded that as a standard. We didn't claim anything that we thought was unreasonable. The arbitrators found that that was part of the expense that was anticipatable and incurred by Pepper Construction, and under the circumstances of this case and that provision, as between Pepper and Palmolive, Palmolive should sustain those reasonably predicted costs. In terms of standard of review on that limited issue, you think it's either abuse of discretion or we have to establish that they're clearly erroneous? I think the standard of review is more narrow than abuse of discretion. I think if you determine that the arbitrators made an error of law or made an error of judgment or made an error of fact with regard to that determination, you must affirm. Unless you find gross error of law or fact or some sort of arbitrator misconduct, I would suggest respectfully that it has to be affirmed. And I would also, again respectfully, caution this panel about deciding all over or second-guessing a panel that sat through 90 days of hearings and had a chance to decide themselves whether out-of-town counsel was necessary or whether the participation of the sub's counsel on behalf of Pepper was reasonable under the circumstances, or whether in a case like this experts were a cost that had to be incurred and were going to be incurred, and to the extent that they had to be incurred, could they be awarded. I think it's very tempting always, and I do it all the time, to second-guess people out of context. These arbitrators sat through 90 days of hearings. They did an excruciatingly long amount of studying. They had a record of thousands and thousands of pages to review. In their discretion, in their best judgment, this is what they thought was appropriate. And I don't sugarcoat the fact that this was a substantial case with a substantial award of costs and attorney's fees. But believe me, they had their reasons, and certainly this panel should assume that they had their reasons. Could you speak to the issue of the basis for shifting the expert witness fees? Yes. It's simply a matter of whether the arbitrators committed gross error in deciding that costs as it relates to a very complex construction arbitration can encompass expert fees. It really comes down to whether under any circumstances, almost any imaginable or not even reasonable circumstances, you would consider expert fees as encompassed in the concept of costs. Palmolive argued to them that costs should be restricted to legal costs. And the arbitrators found that in order to put that restriction on it, you had to add a word to the contract, which the contract didn't have. And so the arbitrators assumed that the contract meant exactly what it said, costs are costs. And if by our definition of costs and our application of the facts to this case, we believe it's a cost, then we're going to award it, particularly given the stipulation that the parties already had, that the prevailing parties, whoever that turned out to be, and again, outside of the context of legalese, which this is, if you talk to anybody about incurring a cost but not incurring an expense, they would think you were crazy. It's just the use of the vernacular, and the arbitrators were, I believe, entitled to apply it that way. As to 304A, I'll say this. There was a motion already decided by this court to not hear the appeal at all, because the 304A certification was inappropriate. That was denied. It's hard for me to believe that that motion could have been denied, and then today, really in the context of a motion to reconsider, this panel would decide that the court below abused her discretion, which she has, including the 304A language. If the panel wants to hear any more about that, I can do that. I'd like to hear they raise something that isn't in the record about Pepper filing a 308. On a different issue, yes, there is a lien issue. And, again, to back up half a step, we very much viewed the arbitration as between Palmolive and Pepper as the liability stage under the contract, how much money is owed under the contract. Pepper had filed liens, and then those proceedings were stayed pending arbitration. It's perfectly logical, which is the substantive contract claim was decided while the enforcement aspect of this litigation was stayed, and that's exactly what happened. The enforcement action of this litigation does involve several claims that relate to collection. One of which is the lien claim. We've been going through, before Judge Curcio, a process where motions to dismiss have been heard, and to kind of whittle down what's going to be a part of this case and what's not. As part of that, with one aspect of lien amendments, she granted a motion to dismiss with regard to a certain category of lien amendments. We felt that there was no appellate law on that particular issue, and that it was an important question that deserved consideration, so we have asked her to certify it. So we're going to see this again? She says with regret. No, I have a client that would like to get paid, frankly. I don't like to say this, but every other lawyer in the case seems to say at every juncture that no matter what happens, this is going to be appealed. I hate to be that pessimistic, but it's a large case, it's been very controversial. This is a case I think that should have been, that both sides should have asked our settlement committee to have addressed it. I'm not saying yes or no, but I'm saying you still have that option. So I just throw that out there to you. I can't report on settlement to an appellate court except to say. No, we have our own, where it is referred to somebody other than this panel. Just as an aside, and frankly irrelevant, that is an active aspect of this case right now also. Thank God. Again, Counselor, your name is Bruce Fickin? F-I-C-K-E-N. And you are from where? I practice in Philadelphia. And what's the name of your firm? Pepper Hamilton. Okay. I thank you. Thank you very much. Are you going to answer his question? Yes, I am. I think all of the parties agree that the arbitrators did not have jurisdiction under the subcontractor's breach of contract claims. And so what we say then in the second sentence, because even Pepper and the arbitrators would agree, and they state that they don't have jurisdiction over the subcontractor's claims, particularly any back charges that Pepper has against the subcontractor. So it's those breach of contract claims directly between Pepper and its subcontractors that all parties agree the arbitrators did not have jurisdiction over. The second sentence is in regards to what really happened in the arbitration, and that is instead of Pepper presenting the claims as pass-through claims as damages against Paul Molliff, the subcontractors actually presented their breach of contract claims and their claims under the contract. If you look at the arbitration award, it's allocated as to each subcontractor. And some of those line items have things for retention, or the amounts that were left over on their contract with Pepper, or their contract balance. Again, showing the amounts left over on the contract. If you look at all the cases cited by both parties in regards to pass-through claims, Passion and the interstate contracting case, which discusses 17 jurisdictions across the country and how they have dealt with pass-through claims, not one of them states the subcontractors can participate and present their own claims. Nor does one of them state that you can proceed without some sort of agreement between the general contractor and the subcontractor that actually terminates litigation after the general contractor proceeds against the owner. And so that's what's going on in those two sentences. I think as to the first statement, it would be generous to call that overstatement or hyperbole. I don't think they came anywhere close to conceding what you are claiming here as a central issue in this case, jurisdiction. I've read page 19 any number of times, and I just don't see it. Okay. Well, I think, I don't think Pepper claims that the, and nor do I think the arbitrators claim that they had jurisdiction over the subcontractors presenting their claims against Pepper or any back charges assessed by Pepper against the subcontractors. Look, part of the public policy behind essentially avoiding some of the privity of contract rules and forcing there to be two trials, in other words, a trial between the general contractor and the subcontractor, and then having the general contractor sue the owner, depending on the outcome of that first trial, is to have, you know, that the general contractor and the subcontractor agree on what should be presented to the owner. Well, that's not what happened here. There was no agreement. If you look at that liquidity agreement, that's not there. And so the whole public policy behind allowing the general contractor to bring claims on behalf of the subcontractors didn't occur at the arbitration. And you've heard counsel talk about these 90 days of arbitration. Well, it was 90 days. I think for one reason there were eight parties present at the arbitration. It wasn't just Pepper and Palmolive. There were six other attorneys and their experts making their presentations and closing arguments and being awarded damages and filing post-hearing briefs. The fact that to say that the subcontractors were just additional counsel of Pepper is just a mere subterfuge, evidenced by all of the arguments we've made today and evidenced even further by the fact that Pepper and subcontractors are suing each other. In addition, as to the gross error of fact and law committed by the arbitrators in awarding expert expenses and travel expenses, the arbitrators clearly commit a gross error of fact and law when instead of relying on Illinois law, they relied on the dictionary for the definition of costs. Expenses under Illinois law, expert expenses, are different than costs and that has been ruled on in Illinois law and the arbitrators chose to award them anyways, which is a gross error of fact and law. In addition, in regards to 304A, Pepper claims that the $35 million determined all liability between the parties. It's not true. Pepper has filed construction trust and constructive trust claims against Palmolive. In addition, there are back charges and breach of contract claims between Pepper and its subs. Thus, the judgment did not decide liability. Therefore, we ask that the order be vacated and reversed. Thank you.